# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM CULLUM,** | : | **CIVIL ACTION NO. 1:09-CV-2385** |
| Petitioner | : | (Judge Conner) |
| v. | : | |
| **WARDEN BRIAN BLEDSOE,** | : | |
| Respondent | : | |

## MEMORANDUM

Petitioner William Cullum ("Cullum"), a federal inmate confined at the United States Penitentiary at Lewisburg ("USP-Lewisburg"), Pennsylvania, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 on December 4, 2009. (Doc. 1.) He contends that the decision of the Federal Bureau of Prisons (BOP) regarding the length of his pre-release custody placement in a residential re-entry center ("RRC") runs afoul of the Second Chance Act of 2007.[1]

The petition is presently ripe for disposition. For the reasons set forth below, the petition will be denied.

## I. Background

Cullum was sentenced on October 28, 2004, in the United States District Court for the Southern District of New York to an 87-month term of imprisonment for conspiracy to possess and distribute 50, 5, and 109 grams of methamphetamine

---

[1] Included in the response is an argument concerning Cullum's release to home confinement. (Doc. 8, at 8-11.) Because Cullum does not seek home confinement (Doc. 1; Doc. 13, at 17), this memorandum will be limited to a discussion of RRC placement.

in violation of 21 U.S.C. § 846. (Doc. 8-2, at 51.) His projected release date is November 23, 2010, *via* good conduct time release. (Doc. 8-2, Declaration of Curt Rothermel ("Rothermel Decl."), BOP Case Manager at USP-Lewisburg, at 5, ¶ 5.)

On April 9, 2008, the Second Chance Act of 2007, Pub. L. No. 110-199, Title II, § 251, 122 Stat. 657, 692 (the "Second Chance Act"), codified at 18 U.S.C. §§ 3621, 3624, was signed into law. The Act increases the duration of pre-release placement in an RRC from six to twelve months and requires the BOP to make an individual determination that ensures that the placement be "of sufficient duration to provide the greatest likelihood of successful reintegration into the community." 18 U.S.C. § 3624(c)(6)(C) (Apr. 9, 2008). Thereafter, the BOP issued two guidance memoranda, dated April 14, 2008 (Doc. 8-2, at 10-13), and November 14, 2008, both of which required approval from the Regional Director for RRC placements of longer than six months. Interim regulations passed on October 21, 2008, state that "[i]nmates may be designated to community confinement as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed twelve months." 28 C.F.R. § 570.21(a). Moreover "[i]nmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. § 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time-frames set forth in this part." 28 C.F.R. § 570.22 (Oct. 22, 2008).

Recommendations for RRC placement are ordinarily reviewed with the inmate and unit team seventeen to nineteen months prior to the inmate's probable release date. (Doc. 8-2, Rothermel Decl., at 5, ¶ 6.) Referrals are then forwarded to the Community Corrections Manager at least sixty days prior to the maximum recommended date. (Id. at ¶ 7, citing BOP Program Statement 7310.04, Community Corrections Center Utilization and Transfer Procedures.)

On July 23, 2009, Cullum was informed by his unit team that he would be recommended for an RRC placement of 150-180 days.[2] (Id. at 6, ¶ 9.) The Inmate Skills Development Plan generated on July 23, 2009, includes consideration of judicial recommendations, education and work data, discipline data, academic and vocational/career progress, interpersonal skills, wellness, mental health, personal character, manner in which leisure time was utilized, and daily living skills. (Doc. 8-2, at 51-64.) It was found that significant attention was required in the areas of vocational/career development, wellness, character, leisure and daily living. (Id. at 64.)

According to the case manager, the RRC recommendation "was based on Cullum's current and past offenses/behavior; noting that Cullum has a lengthy disciplinary record [ ]; available resources within the release district, noting that Cullum previously resided with his brother and is quite familiar with the release

---

[2] Rothermel declares that Cullum was also informed of the unit team's intentions on May 26, 2009. However, there is nothing in the record that indicates that there was notice on this date.

3

area, along with having a strong support system; financial planning, noting that although Cullum is destitute, he has some college and he has received SSI benefits, along with supporting himself as an artist." (Doc. 8-2, Rothermel Decl. at 6, ¶ 11.) "In addition, it was noted and taken into consideration that Cullum was expelled from the 500 Hour Residential Drug Abuse Program on November 17, 2008, for the use of tobacco." (Doc. 8-2, Rothermel Decl., at ¶ 12.)

Conversely, Cullum indicates that his brother no longer lives in the release district, that his strong family support system consists of friends, none of whom can be relied upon for shelter, employment, or medical care, and that he has never earned more then $2000.00 per year as an artist. (Doc. 13, at 21.)

On September 21, 2009, the Warden approved Cullum's RRC placement of 120-180 days, rather than 150-180 days, to allow the RRC flexibility with placement. (Id. at 6, ¶ 10, n.2.) The Corrections Case Manager ("CCM") consulted with the RRC contractor to determine the length of placement time based on the inmate's needs and bed space. (Id. at ¶ 15.) Cullum was afforded 120 days in RRC placement and is scheduled to be transferred to an RRC placement on July 27, 2010. (Doc. 1, at 25.)

Prior to filing the instant petition, Cullum fully exhausted his administrative remedies. (Doc. 1, at 24-25, ¶ 4.31.)

## II. Discussion

Section 2241 "confers jurisdiction on district courts to issue writs of habeas corpus in response to a petition from a state or federal prisoner who 'is in custody in violation of the Constitution or laws or treaties of the United States.' " Coady v.

4

Vaughn, 251 F.3d 480, 484 (3d Cir. 2001). The federal habeas statute also requires that the petitioner be in custody "under the conviction or sentence under attack at the time his petition is filed." Lee v. Stickman, 357 F.3d 338, 342 (3d Cir. 2004) (quoting Maleng v. Cook, 490 U.S. 488, 490-91, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989)). Section 2241, unlike other federal habeas statutes, "confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence," Coady, 251 F.3d at 485. (quoting 28 U.S.C. §§ 2241(a) and (c)(3)). This includes a challenge to the BOP's decision to exclude an inmate from release to an RRC. Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 242, 243-44 (3d Cir. 2005) (quoting Jimian v. Nash, 245 F.3d 144, 147 (2d Cir. 2001)).

The Bureau of Prisons has authority to determine inmate placements according to 18 U.S.C. §§ 3621(b) and 3624(c). Section 3621(b) gives the BOP authority to determine the location of an inmate's imprisonment by considering (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the sentencing court concerning the purpose for which the sentence was imposed or a recommendation of a particular type of correctional facility; (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of Title 28. Section 3624(c) "describes the BOP's obligation to prepare prisoners for community re-entry by, *inter alia*, placing them in community confinement." Woodall, 432 F.3d at 239. When considering an individual's eligibility for

pre-release placement in an RRC, the BOP is required to ensure that decisions are made: (A) consistent with the five factors in 18 U.S.C. § 3621(b); (B) on an individualized basis; and (C) so that the duration of the placement period gives the inmate the greatest likelihood of successful community reintegration. 18 U.S.C. § 3624(c)(6).

Cullum argues that the Federal Bureau of Prisons ("BOP") "has failed to comply with the Second Chance Act [of 2007] in recommending and determining the amount of time he spend in an RRC at the end of his prison term. (Doc. 1, at 25, ¶ 5.1.) He "contends that he is being dinied [sic] up to 12 months in pre-release RRC placement (with the possibility of 6 months of that time on home confinement) due to illegal BOP policy limiting all pre-release RRC placement to 6 months or less, and that the BOP has also abused its discretion by failing to properly consider his facts and circumstances under the required statutory criteria for RRC placement duration." (Id. at ¶ 5.2.) He further states that "[g]iven that Petitioner is destitute, homeless, has a long history of drug addiction, has AIDS, Hepatitus B, bipolar disorder and other serious medical conditions, his need for daily medications, and potential for relapse, up to if not the full twelve months RRC placement provided by the Act would afford the Petitioner time to, amongst other things, establish appropriate medical care, substance abuse counseling, and housing. Medical care and substance abuse counseling will need to be secured before finding a job which in turn will provide a greater likelyhood [sic] of successful reintegration into his community." (Id. at 25-26, ¶ 5.6.)

6

In arguing that he was denied a suitable length of RRC placement due to an illegal BOP policy limiting all pre-release RRC placement to 6 months or less, he primarily relies on the two BOP memoranda dated April 14, 2008, and November 14, 2008. He argues that the April 14, 2008, memorandum impermissibly required approval from the Regional Director for placements of longer than six months, and the November 14, 2008, memorandum wrongly required "unusual or extraordinary circumstances justifying" placement beyond six months. (Doc. 1, at 13-14, ¶¶ 3.7-3.9.) In support of his position, he relies on the case of Krueger v. Martinez, 665 F. Supp. 2d 477 (M.D.Pa. 2009). Therein, the Honorable Sylvia H. Rambo concluded as follows:

> It is clear to this court that by increasing the maximum placement period from six months to twelve months, and requiring the BOP to ensure that placements are long enough to provide "the greatest likelihood of successful reintegration," Congress intended that each inmate be considered for the full twelve month period of RRC placement with the only limitation being the application of the § 3621(b) factors. See 18 U.S.C. § 3624(c)(1), (6). The BOP's memoranda add additional hurdles that find no support in the text of the Second Chance Act. While it may be true that any given prisoner need not be placed in a RRC for longer than six months, it is not universally true that every prisoner will benefit from the same limitations. By depriving the initial decision maker of the ability to recommend placement unfettered by a presumptive six month cap, the BOP significantly reduces the possibility of a truly individualized review that objectively determines the duration required "to provide the greatest likelihood of successful reintegration into the community." 18 U.S.C. § 3624(c)(6)(C). Accordingly, because the duration of Krueger's RRC placement was determined pursuant to these impermissible limitations, the BOP abused its discretion in deciding that Krueger's placement would be for five to six months.

Id. at 483. As relief, Judge Rambo "grant[ed] a writ of habeas corpus directing the BOP to reconsider the length of Krueger's RRC placement taking into

7

consideration the requirements of the Second Chance Act and the factors outlined in 18 U.S.C. § 3621(b) and disregarding the limitations imposed by either the April 14, 2008 or November 14, 2008 memoranda." Id. at 484. Support for this position can also be found in the case of Strong v. Schultz, 599 F. Supp. 2d 556 (D.N.J. 2009).

However, courts have since recognized the limited holding of these cases. In cases such as the matter *sub judice*, where the RRC placement decision was made after the BOP issued the October 28, 2008 regulations, courts have consistently held that the Second Chance Act affords the BOP discretionary authority to transfer an inmate to an RRC, for up to twelve months prior to the inmate's release date, after considering the factors set forth in section 3621(b). See Stokes v. Norwood, No. 10-5645, 2010 WL 1930581, at *6 (D.N.J. May 12, 2010) (collecting cases); see also, Wires v. Bledsoe, No. 09-2247, 2010 WL 427769, at * 4 (M.D.Pa. Feb. 3, 2010) (finding that the record clearly established that petitioner's unit team gave petitioner individualized consideration for RRC placement consistent with the five factors of section 3621(b)).

In evaluating Cullum's eligibility for RRC placement, the unit team considered the nature of the offense of Conspiracy to Distribute 50, 5, and 109 grams of methamphetamine, see § 3621(b)(2), the fact that he had no prior convictions, and that his current offense was a non-violent/non-sex offense. (Doc. 8-2, at 51, 61.) Also considered was the judicial recommendation that he participate in substance abuse programming, see § 3621(b)(4). (Id. at 51.) It was noted that

8

while he completed a forty-hour drug treatment program, he was expelled from another due to possession of tobacco. (Id. at 61.) Cullum's personal history and characteristics were also evaluated by the unit team, see § 3621(b)(3). (Id. at 62.) It was documented that he had a GED or high school equivalent diploma and that he was proficient in the English language. (Id. at 52.) Cullum's medical wellness was also discussed. His various medical conditions were noted and it was documented that he was a chronic care inmate that required medication upon release from custody and ongoing treatment after his release. (Id. at 60.) The record in this case clearly establishes that Cullum's unit team gave him individualized consideration consistent with the factors of section 3621(b). Consequently, the petition for writ of habeas corpus will be denied.

**III. Conclusion**

Based on the foregoing, the petition for writ of habeas corpus will be denied. An appropriate order follows.

    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated: June 15, 2010

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM CULLUM,** | : | CIVIL ACTION NO. 1:09-CV-2385 |
| Petitioner | : | (Judge Conner) |
| v. | : | |
| **WARDEN BRIAN BLEDSOE**, | : | |
| Respondent | : | |

## **O R D E R**

AND NOW, this 15th day of June, 2010, in accordance with the accompanying memorandum, it is hereby ORDERED that:

1. The petition for writ of habeas corpus (Doc. 1) is DENIED.

2. The Clerk of Court is directed to CLOSE this case.

        S/ Christopher C. Conner
        CHRISTOPHER C. CONNER
        United States District Judge